CLAFLIN and others *v.* LISSO and others.    (Consolidated Cases.)[1]

(*Circuit Court, E. D. Louisiana.*    March, 1886.)

1. FRAUDULENT CONVEYANCE — REVOCATORY ACTION UNDER CIVIL CODE OF LOUISIANA.
    Under the Civil Code of Louisiana the judgment in the revocatory action instituted by creditors to set aside a fraudulent conveyance, if the action be successful, is that the conveyance be avoided as to its effects on the complaining creditors, and that all the property or money taken from the original debtor's estate by virtue thereof, or the value of such property, to the amount of the debt, be applied to the payment of the complaining creditors.

2. SAME—IN EQUITY.
    The same rule will be applied in equity in the circuit court of the United States with respect to property in Louisiana, the complaining creditors being citizens of other states.

3. SAME—WIFE'S LEGAL MORTGAGE.
    The lien of a "legal mortgage" in Louisiana to secure a debt due by the husband to the wife affects third persons only from the date of its recordation, and attaches only to property in the parish belonging to the husband, or therein and thereafter acquired by him. When, therefore, after a fraudulent conveyance to the wife by the husband, she records her debt, her lien as mortgagee does not attach to the property theretofore conveyed, which, as between the spouses, belongs to her, and not to him.

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

**4. SAME—FRAUDULENT CONVEYANCE TO WIFE.**
    Such fraudulent conveyance being set aside at the suit of complaining cred-
itors, is set aside as to them primarily, and the property thus unmasked, or
its proceeds or value, will be applied by preference to their claims. The same
result would be reached, substantially, on general principles of equity.[1]

In Chancery.

The complainants, citizens of Massachusetts, and New York, filed
suits in the state court of Louisiana, which were revocatory in their
character, to set aside, *inter alia*, a conveyance from the defendant J.
H. Scheen to his wife, as made in fraud of creditors. The suits were
removed by them to the United States circuit court, and proceeded as
to the demands for revocation on the chancery side, where they were
consolidated. Under the Louisana Code such suits may be instituted
either by judgment creditors or by those creditors not having judg-
ments, who join their debtors as parties with the alleged fraudulent
grantee. Civil Code La. 1972. The theory of the decree in such a
suit, as stated in the Code, is that the conveyance, if the action be
successful, is set aside as to the complaining creditors, who thus ac-
quire a preferential right to have the property applied to their claims as
established. Civil Code, 1982. Counsel for complainants stated that
this rule of preference did not exist under the Code Napoleon, but was
probably introduced into the Code of Louisiana by Mr. Livingston,
who had been an equity lawyer in New York.

*W. W. Howe*, for complainants.

*W. H. Rogers*, for Mrs. Scheen.

PARDEE, J. On January 22, 1883, the following decree was ren-
dered in this case:

"*  *  *  Second.* That as to the act of conveyance or *dation en paie-
ment*, recited in the bills of complaint herein made by the defendant John
H. Scheen unto the defendant Nancy A. Bradley, his wife, by act passed be-
fore D. H. Hayes, notary, parish of Red River, November 23, 1878, and filed
for record and recorded in said parish in Conveyance and Mortgage Books
the same day, and whereof a certified copy has been filed as an exhibit herein
November 26, 1879, and is now annexed hereto as part hereof, be, and the
same hereby is, in all things revoked, annulled, and set aside; and the prop-
erty therein described, and purporting thereby to be conveyed to said Mrs.
Nancy A. Bradley, wife of John H. Scheen, declared to have been the prop-
erty of said John H. Scheen at the time the bills of complaint herein were
filed, to-wit, November 13, 1879; and is hereby subjected to the just claims,
demands, and judgments of complainants herein, subject to provisions here-
inafter made; which judgments herein against said Julius Lisso and John H.
Scheen, *in solido*, are as follows: *H. B. Claflin & Co.* v. *Lisso & Scheen*, (No.
8,883 of the docket of this court,) $9,580 40-100, with interest thereon set
forth; *H. Bernheim & August* v. *Lisso & Scheen*, (No. 8,880,) $655.38, with
interest as thereon set forth; *August, Bernheim & Bauer* v. *Lisso & Scheen*,
(No. 8,881,) $2,326.36, with interest as thereon set forth; *Claflin & Thayer*
v. *Lisso & Scheen*, (No. 8,882,) $2,298.57, with interest as thereon set forth.
And it is further ordered that any mortgage claims which Mrs. Scheen may

[1]See note at end of case.

have against said property described in said deed of November 23, 1878, be, and the same hereby are, reserved for further decision.   *   *   *."

On the same day as the said decree the complainants filed a supplemental bill, alleging that Mrs. Scheen sets up some claim by way of mortgage on the property described in the conveyance annulled by the decree, which alleged mortgage claims are *null* and *void*, particularly against complainants, and asking that Mrs. Scheen have notice, and that her said mortgage claims may be declared void as to the demands and preferences of complainants. Thereupon Mrs. Scheen interposed a plea to the jurisdiction, based on the insolvency proceedings in the state court, which plea was overruled December 26, 1883, and on April 7, 1884, an answer was filed, and thereafter a cross-bill. In both the answer and cross-bill is set up an indebtedness of Scheen, the husband, to defendant, for paraphernal property coming to his hands and used by him, a wife's mortgage resulting therefrom, and a recordation thereof in the parish of Red River, April 30, 1879, and in the parish of Bienville, June 6, 1879. It is further averred that said indebtedness has been recognized and adjudicated in her favor, with recognition of her legal mortgage, in the state courts of Louisiana, in a suit against her husband and the syndic in the insolvency proceedings of Lisso & Scheen; and the insolvency proceedings in *Re Lisso & Scheen* are fully set forth, with averments that complainants are ordinary creditors of Lisso & Scheen, and are subordinated to the individual creditors of Scheen, so far as Scheen's individual property is concerned.

Demurrers have been filed to the answer and cross-bill, and the matter now for decision arises on said demurrers.

The decree of January 22, 1883, settled the rights of the parties to the property described in the revoked conveyance, making two reservations,—one in favor of any mortgage rights bearing on the property that Mrs. Scheen might have, and one as to the question of priority between complainants and the syndic of Lisso & Scheen. The latter matter has passed out of the case by decree in favor of complainants, rendered December 26, 1883. The decree of January 22, 1883, settles that the complainants are judgment creditors of Lisso & Scheen, and have, for the satisfaction of their judgments, an equitable lien on the property described. The answer and cross-bill aver a legal mortgage of Mrs. Scheen bearing on the same property, and the demurrers admit such a mortgage. The question, then, presented to the court is one of priority.

It is too late to deny that complainants have any lien, and also to argue as to the effect of the insolvency proceedings on the jurisdiction of the court, etc. These questions have been settled by the decrees aforesaid contradictorily with Mrs. Scheen, and for the purposes of this matter are to be taken as well settled. Certainly they are not to be reversed in a collateral way. The proceedings in the state court recognizing Mrs. Scheen's legal mortgage are *res inter alios acta* as to

complainants, and not binding on them. The plaintiffs commenced their revocatory actions in December, 1878, obtained their judgments at the November term, 1879, and the decree declaring their lien, January 22, 1883. It is probable, under this state of facts, that the question of priority might be settled in complainants' favor by mere reference to dates, as the legal mortgage of Mrs. Scheen was not recorded until long after the institution of complainants' revocatory actions, to which Mrs. Scheen was a party. If the lien of complainants under said decree of January 22, 1883, relates back to and dates from the institution of the revocatory action, the complainants are prior in time, and entitled to priority of lien. See *Corning* v. *White*, 2 Paige, 567; *Hayden* v. *Bucklin*, 9 Paige, 512. However this may be, of which I express no opinion, I think the complainants have a clear priority of lien on the facts of the case as submitted to the court.

Under the stipulation on file, the cause is submitted on bills, answers, and demurrers, the effect of which is that the facts averred in the answers are admitted, and that those facts averred in the complainants' bills not denied nor avoided are admitted. The court takes judicial notice of the decrees and orders of court made in the case. From these sources it appears that the firm of Lisso & Scheen was indebted in large sums to complainants; that being involved, and perhaps insolvent, both members of the firm made conveyance of property, partnership and individual, to their respective wives, particularly that Scheen conveyed to his wife, under the form of a *dation en paiement*, certain real estate described; that the complainants commenced suits in December, 1878, against Lisso & Scheen, in the district court in the parish of Red River, by attachment and revocatory action combined, which suits were removed to this court, transcripts being filed here November 3, 1879. In this court the attachments went on the law side, resulting in a dismissal of the attachments, but in judgments for the debts. The revocatory action went on the equity docket, the pleadings were recast, and the decree of January 22, 1883, resulted. Mrs. Scheen recorded her legal mortgage against her husband in April, 1879, and her contention is that as her mortgage was recorded prior to the recovery of complainants' judgments, that it has priority over complainants' lien on the property recovered in the decree of January 22, 1883.

As to the complainants, Mrs. Scheen had no mortgage on her husband's property prior to the recordation of the same, and it did not, as against complainants, attach to the property in suit here when recorded, because at that time Scheen, the husband, had no interest in or ownership of the said property. From the date of the deed from Scheen to Mrs. Scheen until the decree of January 22, 1883, the said property stood in the name of Mrs. Scheen, and was hers to all the world except complainants. The decree of 1883, as resulting from the revocatory action, set aside Mrs. Scheen's title in favor of complainants, but in favor of no one else,—least of all, her husband,

Scheen. This is the direct effect to be given the revocatory action in this state, which action was the one instituted by the complaining creditors, prosecuted in this court according to the equity rules and practice. See R. C. C. § 1977; *Townsend* v. *Miller*, 7 La. Ann. 633.

At the institution of complainants' suits this property stood in the name of Mrs. Scheen, owner. So far as the facts of this case go, it still stands in the name of Mrs. Scheen, owner, except as to complainants, and Mrs. Scheen, mortgagee, has no standing under Louisiana law to dispute priority with complainants. But for the confusion of mind resulting from the fact that Mrs. Scheen, grantee in the fraudulent conveyance, and Mrs. Scheen, wife of grantor in said conveyance and mortgagee, are one and the same person, the matter would appear to be too plain for argument. Under general equity principles the case seems equally conclusive.

As at the time of record of Mrs. Scheen's mortgage the property did not belong to her husband, the mortgage did not attach until the property was subsequently restored to Scheen by the decree of January 22, 1883, declaring the conveyance to Mrs. Scheen *null* and *void;* but at such restoration to Scheen, and as a condition of restoration, it was burdened with the lien of complainants' judgments. Mrs. Scheen, as mortgagee of the subsequently acquired property of her husband, could get no priority over the complainant creditors whose diligence had unmasked her fraudulent title, and had restored the property to her husband's estate. See *Lyon* v. *Robbins,* 46 Ill. 276; *Miller* v. *Sherry,* 2 Wall. 249; *In re Estes,* 3 Fed. Rep. 134.

The demurrers in this case are sustained.

NOTE.

For a full discussion of the question of fraudulent conveyances generally, see Platt v. Schreyer, 25 Fed. Rep. 83, and note, 87-94.

Respecting fraudulent conveyances to wife, see note to Platt v. Schreyer, ¶ (2) of § 2, pages 89, 90.